1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUIS ENRIQUE OVALLE MARQUEZ,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL NO. 97-1571 (RLA)
[Cr. 91-397 (RLA)]

## ORDER DENYING 28 U.S.C. § 2255 PETITION

    Before the Court is LUIS OVALLE MARQUEZ'S Motion Pursuant to 28 U.S.C. § 2255 (docket No. 2) and an Amended Petition Under 28 U.S.C. §2255 (**docket No. 21**). Pursuant to the Court's orders, the United States responded to both. **See docket Nos. 4 and 23.**[1]

### BACKGROUND[2]

    Special agents of the Drug Enforcement Administration ("DEA") were alerted to a drug trafficking operation in the Lajas/Cabo Rojo area of Puerto Rico by a paid government confidential informant, WILLIE LINDER, a German Citizen and fisherman who has lived in Puerto Rico since 1960.

---

[1] See **also**, Petitioner's Reply... (docket No. **6**); Petitioner's Supplemental Reply... (docket No. **8**); and Additional Evidence in Support... (docket No. **22**) and Responce [sic] to the Government's Opposition..., the filing of which is hereby **GRANTED**.

[2] This Background tracks the facts from the opinion issued by the Court of Appeals in United States v. Ovalle-Marquez, 36 F.3d 212 (1st Cir. 1994), cert. denied, 513 U.S. 1132 (1995).

CIVIL NO. 97-1571 (RLA)                                              Page 2

On November 27, 1991, LINDER met with OVALLE and co-defendants MIGUEL RIVERA SANTIAGO (RIVERA), SERGIO MONTEAGUDO-MARTINEZ (MONTEAGUDO),[3] and HUMBERTO ARTUNDUAGA-ALVARADO (ARTUNDUAGA) in Las Cuebas, Puerto Rico. At this meeting, a plan was devised to import approximately 800 kilograms of cocaine (approximately 22 bales) to Puerto Rico by an airdrop of the narcotics in waters off the coast of the Dominican Republic. The meeting's participants planned to use two vessels to recover the narcotics--LINDER would captain his own boat, and MONTEAGUDO would captain the other boat. The vessels would depart from Puerto Rico for a location off the coast of Punta Espada, Dominican Republic, where they would load the cocaine onto the vessels with the help of some other individuals unknown to them. Tentatively, they scheduled the smuggling venture for sometime between December 8-13, 1991.

On November 29, 1991, OVALLE and ARTUNDUAGA delivered $1000 to LINDER for the purpose of enabling LINDER to repair his boat. Thereafter, and up until December 9, OVALLE and ARTUNDUAGA met with LINDER occasionally to inquire about the status of the repairs, and to provide LINDER with additional money for its completion.

At some point in time it appears that defendants became suspicious of LINDER, and the defendants decided not to include LINDER in the smuggling operation planned for early December.

_____

[3] MONTEAGUDO entered into a plea agreement with the government and testified for the prosecution.

CIVIL NO. 97-1571 (RLA)                                                    **Page 3**

Thereafter, on or about December 7, 1991, OVALLE, RIVERA and MONTEAGUDO, as well as others, met to finalize the plans for the smuggling operation, without LINDER's help.  At the December 7 meeting, RIVERA gave MONTEAGUDO two firearms, a .38 caliber revolver and a .22 caliber pistol. OVALLE loaded the firearms for MONTEAGUDO.

On December 9, 1991, after giving a pre-arranged signal to a plane flying nearby, MONTEAGUDO, co-defendant SANTOS VICTOR CHALA-RAMOS (CHALA), and two other men from the Dominican Republic, picked up 21 bales, containing approximately 800 kilograms of cocaine, off the coast of Santo Domingo, Dominican Republic.  MONTEAGUDO decided to leave in one boat with 11 bales of cocaine, and leave 10 bales of cocaine hidden on a nearby beach because one of the boats that MONTEAGUDO had planned to use to pick up the cocaine was damaged. The remaining bales of cocaine were left guarded by the two-man crew of the damaged boat.

On December 11, 1991, MONTEAGUDO and the other Dominican man on board (known to MONTEAGUDO as QUEQUE), proceeded to import 11 of the 21 bales of cocaine into Puerto Rico.  However, in an attempt to halt a pursuit by unknown persons and minimize the loss of the entire load, he was forced to throw seven bales into the seas.  MONTEAGUDO eventually delivered the remaining four bales to OVALLE and RIVERA.

The defendants then agreed to recover the rest of the cocaine that had been left behind in the Dominican Republic.  On December 12, OVALLE and RIVERA met with LINDER to survey various coastline areas,

1  **CIVIL NO. 97-1571 (RLA)**                                                    **Page 4**

2  ───────────────────────────────────────────────────────────────

3  including Playita Rosada in La Parguera, Puerto Rico for possible

4  landing sites to recover the remaining bales of cocaine.

5         On December 13, OVALLE, RIVERA and ARTUNDUAGA visited LINDER at

6  his home to obtain his help in recovering the other ten bales of

7  cocaine.  LINDER was instructed to meet with OVALLE in Ponce for

8  further instructions.  LINDER then met with OVALLE and another man as

9  arranged.  The men then went to RIVERA's home where LINDER left his

10 car.  RIVERA, OVALLE, LINDER and the other man then proceeded to a

11 pier in Ponce.  MONTEAGUDO met them at the pier, and MONTEAGUDO and

12 LINDER then departed in a boat for Lajas, Puerto Rico.  It was

13 sometime during the day that LINDER contacted DEA agents and advised

14 them of defendants' planned venture.

15        On December 14, MONTEAGUDO and LINDER departed Puerto Rico

16 towards the area of Saona, Dominican Republic, where they were

17 assisted by several Dominican men in the loading of the remaining ten

18 bales of cocaine (372 kilograms).  Then, on December 15, MONTEAGUDO

19 and LINDER returned to Playita Rosada, where DEA agents seized the

20 cocaine and arrested MONTEAGUDO.  DEA agents subsequently arrested

21 OVALLE and RIVERA.

22                          <u>PROCEDURAL BACKGROUND</u>

23        On June 3, 1992, a grand jury returned a second superseding

24 seven count indictment against OVALLE and eight other defendants.

25 **Counts One and Two** of the indictment charged the defendants with

26 conspiring to import, and conspiring to possess with the intent to

distribute, approximately 800 kilograms of cocaine from November 27 to December 17, 1991, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a) and 963. **Count Three** charged the defendants with aiding and abetting the importation of approximately 418 kilograms of cocaine on December 11, 1991, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2. **Count Four** charged the defendants with aiding and abetting the possession with intent to distribute approximately 150 kilograms of cocaine on December 11, 1991, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. **Counts Five and Six** charged the defendants with aiding and abetting the importation, and possession with intent to distribute, 372 kilograms of cocaine on December 15, 1991, in violation of 21 U.S.C. § 841(a)(1) and 952(a), and 18 U.S.C. § 2. **Count Seven** charged the defendants with aiding and abetting the use and carrying of firearms in relation to a drug offense, in violation of 18 U.S.C. § 924(c)(1).

Trial commenced on August 25, 1992, and the jury returned guilty verdicts against OVALLE on Counts One, Two, Five and Six. The jury acquitted all of the defendants, including OVALLE, of the charges in Counts Three, Four and Seven.

At a sentencing hearing on January 22, 1993, the Court determined that OVALLE's total offense level was 46, and that his Criminal History Category was I, which mandated a sentencing guideline range of life imprisonment. OVALLE was then sentenced to four concurrent sentences of life imprisonment.

1  CIVIL NO. 97-1571 (RLA)                                    Page 6

2  ──────────────────────────────────────────────────────────────

                                  **Appeal**
3
       On appeal, OVALLE challenged his conviction and sentence by
4
   raising the following claims:
5
       1)  Court's failure to make sentencing findings;
6
       2)  improper limits on cross-examination;
7
       3)  prosecutorial misconduct;
8
       4)  firearm enhancement;
9
       5)  supervisory and managerial role enhancement; and
10
       6) erroneous findings regarding quantity of drugs.
11
       All issues were decided on the merits and the conviction was
12
   affirmed.  See United States v. Ovalle-Marquez, 36 F.3d 212 (1st Cir.
13
   1994), cert. denied, 513 U.S. 1132 (1995).
14
                     **Original 28 U.S.C. § 2255 Petition**
15
       In his original § 2255 petition, OVALLE raised the following
16
   claims of constitutional error:
17
       1) ineffective assistance of counsel, including a conflict of
18
   interest among counsel, refusal to allow the defendant to testify on
19
   his own behalf, and ineffective assistance at sentencing;
20
       2) improper and arbitrary limitation on cross-examination of
21
   witnesses;
22
       3) illegal enhancement for role in the offense;
23
       4) erroneous enhancement for possession of firearm;
24
       5) failure to instruct the jury on specific issues;
25
       6) duplicity of the indictment; and
26

CIVIL NO. 97-1571 (RLA)                                                    Page 7

7) retroactive application of Sentencing Guidelines Amendment 505 to Section 2D1.1(c).

### Amended Petition

OVALLE's Amended §2255 petition, filed after the Court granted his request for appointment of counsel, alleged the following claims:

A) Ineffective assistance of counsel, which incorporated the following:

1. failure of counsel to call witnesses in his favor and to allow petitioner to testify;

2. failure to challenge the role in the offense;

3. failure to raise the attorney-client privilege to prohibit the cooperating co-defendant from testifying about information allegedly acquired during the joint defense meetings;

4. failure to move to suppress testimony in violation of 18 U.S.C. § 201(c);

5. outrageous government conduct--failure to move to suppress the testimony of the confidential informant; and

B) Retroactive application of Sentencing Guidelines Amendment 505.

### DISCUSSION

### Issues disposed of on appeal

Issues disposed of in a prior appeal cannot be re-litigated by way of a 28 U.S.C. § 2255 motion. Murchu v. United States, 926 F.2d

CIVIL NO. 97-1571 (RLA)                                           Page 8

50, 55 (1ˢᵗ Cir. 1991), <u>Singleton v. United States</u>, 26 F.3d 233, 240

(1ˢᵗ Cir. 1994), <u>cert. denied</u>, 115 S.Ct. 517 (1994).

Issues No. 2-4 of OVALLE'S original §2255 petition, which were

fully litigated and rejected in his direct appeal, cannot now be

raised by way of a collateral attack on his sentence. Accordingly,

they are hereby DENIED.

<u>**Issues not raised on appeal**</u>

The Supreme Court has repeatedly emphasized that § 2255 is not

a substitute for direct appeal. See <u>e.g.</u>, <u>United States v. Frady</u>,

456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982);

<u>McCleskey v. Zant</u>, 499 U.S. 467 (1991). Therefore, non-

constitutional claims that could have been, but were not, raised on

appeal, may not be asserted by collateral attack pursuant to § 2255,

absent exceptional circumstances. See <u>Stone v. Powell</u>, 428 U.S. 465,

477 n.10 (1976).

We find that OVALLE's claims that the indictment was duplicitous

and the Court failed to instruct the jury as he requested (issues 5

and 6 of the original petition) fall far short of the "exceptional

circumstances" standard enunciated by the Supreme Court. Neither

claim is based on exceptional circumstances. Rather, each alleges

ordinary errors that could and should have been raised by OVALLE on

direct appeal. Furthermore, even assuming error was committed, the

errors would not amount to the "complete miscarriage of justice"

standard established by the Supreme Court for claims that do not

CIVIL NO. 97-1571 (RLA)                                    **Page 9**

allege jurisdictional or constitutional errors. <u>See</u>, <u>e.g.</u>, <u>Hill v. United States</u>, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

Having ignored his opportunity to raise these claims on direct appeal, OVALLE cannot now raise them in a collateral attack. Accordingly, these two claims are DENIED. <u>Singleton</u>, 26 F.3d at 240.

### Ovalle's Ineffective Assistance of Counsel Claims

The Sixth Amendment of the U.S. Constitution guarantees criminal defendants the right to effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir.1993). This right does not require either a "letter-perfect" or successful defense. <u>United States v. Natanel</u>, 938 F.2d 302, 309-10 (1st Cir. 1991), <u>cert</u>. <u>denied</u> 502 U.S. 1079 (1992).

In order to prevail on a Sixth Amendment claim, a defendant must satisfy the two prongs set forth in <u>Strickland</u>. These are: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that prejudice resulted. <u>Matthews v. Rakiey</u>, 54 F.3d 908, 916 (1st Cir. 1995) (citing <u>Strickland</u>, at 694, 104 S.Ct. at 2068).

As to the first prong, the yardstick is whether counsel has brought to "bear such skills and knowledge as will render the trial as a reliable adversarial process." <u>Scarpa v. Dubois</u>, 38 F.3d 1, 8 (1st Cir. 1994) (citing <u>Strickland</u>, at 687, 104 S.Ct. at 2064). Thus, the proper measure of attorney performance remains simply

1  **CIVIL NO. 97-1571 (RLA)**                                          **Page 10**

2  _____

3  reasonableness under the prevailing professional norms taking also

4  into consideration the totality of circumstances. Id. The evaluation

5  as to this prong demands a fairly tolerant approach. Specifically,

6  Strickland provides that judicial scrutiny of counsel's performance

7  must be highly deferential because it is all too tempting for a

8  defendant to second guess counsel's assistance after conviction and

9  adverse sentence.  Furthermore, the difficulties inherent in making

10  the evaluation create a strong presumption that counsel's conduct

11  falls within a wide range of reasonable professional assistance; that

12  is, a defendant must overcome the presumption that, under the

13  circumstances, the challenged action "might be considered sound trial

14  strategy." Strickland, at 689, 104 S.Ct. at 2065.

15     In conclusion, a petitioner bears an extremely heavy burden. The

16  Court must evaluate the challenged conduct from counsel's perspective

17  at the time, considering the totality of the circumstances before it,

18  and making every effort to eliminate the distorting effects of

19  hindsight.

20     As to the second prong, petitioner must have suffered actual

21  prejudice as a result of counsel's decision. Strickland, at 693.

22  This "prejudice" element also presents a high hurdle to overcome.

23  Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996).  Even if

24  counsel's error is perceived as professionally unreasonable, that by

25  itself does not warrant setting aside the judgment.  The defendant

26  must show that the error actually had an adverse effect on the final

1  **CIVIL NO. 97-1571 (RLA)**                                    **Page 11**

2  ─────────────────────────────────────────────────────────────

3  outcome of the trial.  That is, he must affirmatively show that, but

4  for counsel's unprofessional errors, the result of the proceeding

5  would have been different.  Strickland at 691-94.

6       The Court of Appeals for the First Circuit has established that

7  a petitioner bears a very heavy burden on an ineffective assistance

8  claim.  "The habeas court must evaluate the [challenged] conduct from

9  counsel's perspective at the time, considering the totality of the

10  circumstances before it, and making every effort... to eliminate the

11  distorting effects of hindsight." Lema, 987 F.2d at 51 (internal

12  citations omitted).

13       A review of petitioner's claims and the criminal record of this

14  case readily demonstrates that petitioner's list of counsel's alleged

15  failures is unsubstantiated.

16       OVALLE asserts in his amended 2255 petition that his counsel

17  provided ineffective assistance because he allegedly failed to:

18  1) call witnesses in his favor or allow him to testify in his own

19  behalf; 2) challenge the role in the offense; 3) raise the attorney-

20  client privilege to stop the cooperating witness from testifying

21  about information acquired by the joint defense meetings and/or

22  agreement; 4) move to suppress the testimony of the cooperating

23  witness for having been obtained in violation of 18 U.S.C. Section

24  201(c); and 5) move to suppress the testimony of the confidential

25  informant pursuant to an outrageous government conduct defense.

26

1  CIVIL NO. 97-1571 (RLA)                                    Page 12

2  _____

        1.   **Alleged failure to call witnesses in Ovalle's favor and to**
3            **allow him to testify in his own behalf**.

4       OVALLE claims in his amended 2255 petition that he informed

5  counsel of his desire to testify in his own behalf and that his

6  counsel allegedly denied him that right because petitioner did not

7  know English and the prosecutor could allegedly confuse him during

8  cross-examination.

9       Yet, there is a presumption that OVALLE's counsel decision to

10 recommend him not to testify on his own behalf was made by the trial

11 counsel as part of his case strategy at the time of trial.   The

12 reasonableness of counsel's challenged conduct should be judged upon

13 the facts of this particular case, "viewed as of the time of

14 counsel's conduct." Strickland, 466 U.S. 690.  The precise basis or

15 bases for the trial counsel's strategy at that moment are presumed to

16 be reasonable and deference should be granted to counsel's judgment.

17 Thus, OVALLE fails to rebut the strong presumption that counsel's

18 conduct falls within a wide range of reasonable professional

19 assistance and that, under the circumstances, the challenged action

20 'might be considered sound trial strategy.' Lema 987 F.2d at 51.

21      Second, OVALLE failed to show any prejudice suffered by him

22 because of his counsel's failure to allow him to testify in his own

23 behalf.   OVALLE mentioned in his 2255 petition, without more, that

24 his testimony would have contradicted the testimony of the

25 cooperating witnesses and the confidential informant.  Nonetheless,

26

CIVIL NO. 97-1571 (RLA)                                    Page 13

petitioner fails to explain the grounds for his contention and the prejudice he suffered.  "Some greater particularity is necessary ...to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim."  Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991).

Third, the government's strong evidence against OVALLE and the other co-defendants outweighed the value of his potential testimony in light of the totality of the circumstances and the case strategy.

OVALLE also asserts that his counsel failed to call several friends from Colombia who were willing to testify on his behalf.  The decision not to call these witnesses was also made by OVALLE's counsel as a "tactical" decision.  These witnesses, friends and family members of OVAllE, would have offered cumulative reputation testimony.  In light of the circumstances surrounding the case and the counsel's own defense strategy, OVALLE's attorney decided not to call them.  See e.g. Lema, 987 F.2d at 55 ("the decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case").

In any event, OVALLE has failed to show any prejudice to him caused by his counsel's alleged failure to call these witnesses.  Furthermore, the government's strong evidence against petitioner weakens, if not eliminates, any claim of prejudice.

CIVIL NO. 97-1571 (RLA)                                      Page 14

## 2.  Alleged failure to challenge role in the offense

OVALLE claims that his counsel failed to challenge the enhancement for role in the offense which was included in the Pre-Sentence Report (PSR).

OVALLE claims that his attorney failed to raise his objections to the PSR in the manner required by District Court of Puerto Rico Local Rule 418, because his attorney only submitted his objections to the probation officer and failed to submit his objections to the court.   The record shows, however, that OVALLE was afforded an opportunity at the  sentencing hearing to advance his objections to the PSR and the Court of Appeals so acknowledged in its opinion. See Ovalle, 36 F.3d at 228, note 10.   Thus, OVALLE's counsel did, in fact, challenge the role in the offense at the sentencing hearing.

In light of the foregoing, OVALLE has failed to show that his counsel incurred in ineffective assistance of counsel in this issue.

## 3.  Alleged failure to raise attorney-client privilege

OVALLE states in his amended 2255 petition that in this case there was an alleged joint defense agreement and numerous joint meetings where defense strategy was discussed at which government witness SERGIO MONTEAGUDO was present.   OVALLE implies that MONTEAGUDO disclosed defense strategy to the government and breached the joint defense agreement.   In essence, OVALLE contends that even though his counsel was aware of the joint defense agreement, he never raised its existence to this Court in order to impede the testimony

1  CIVIL NO. 97-1571 (RLA)                                    **Page 15**

2  _____

3  of MONTEAGUDO given at trial in violation of the agreement.

4  Furthermore, OVALLE avers that his counsel incurred in ineffective

5  assistance of counsel because he never raised the attorney-client

6  privilege which allegedly would have protected the communications

7  between the co-defendants and MONTEAGUDO.

8       "The joint defense privilege" is an extension of the attorney

9  client privilege.'" United States v. Bay State Ambulance, 874 F.2d

10  20, 28 (1st Cir. 1989) (quoting Waller v. Financial Corp. of America,

11  828 F.2d 579, 583, n.7 (9th Cir. 1987)). "The joint defense privilege

12  protects communications between an individual and an attorney for

13  another when the communications are 'part of an on-going and joint

14  effort to set up a common defense strategy.' In Re Bevill, Bresler &

15  Schulman Asset Management Corp., 805 F.2d 120, 126 (3d Cir. 1986)

16  (citation omitted).  "Communications to an attorney to establish a

17  common defense strategy are privileged even though the attorney

18  represents another client with some adverse interests." Eisenberg v.

19  Gagnon, 766 F.2d 770, 787-88 (3d Cir.), cert. denied, 474 U.S. 946,

20  106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985); see also United States v.

21  McPartlin, 595 F.2d 1321, 1336 (7th Cir.) Cert. denied, 444 U.S. 833,

22  100 S.Ct. 65, 62 L.Ed.2d 43 (1979).  To qualify for the privilege,

23  the communication must have been made in confidence.  See United

24  States v. Keplinger, 776 F.2d 678, 701 (7th Cir. 1985), cert. denied

25  476 U.S. 1183 (1986).

26

CIVIL NO. 97-1571 (RLA)                                          Page 16

First of all, OVALLE has failed to prove that a joint defense privilege existed.  OVALLE states in his amended 2255 petition and affidavit that there was a joint defense effort between the co-defendants and their attorneys, claiming the agreement was verbal and existed since the beginning of the case.  However, OVALLE fails to provide any evidence to establish that the communications allegedly made during any meetings were made in the course of a joint defense effort, or that the privilege has not been waived.  OVALLE makes reference only to various meetings that were held among various co-defendants and their attorneys in which it was agreed that if a co-defendant decided to cooperate with the government, the attorney would so inform the others and withdraw.

More importantly, OVALLE has failed to present any evidence to show what information was allegedly divulged by MONTEAGUDO to the government and, if the information had been obtained by MONTEAGUDO at the meetings, how this purported information prejudiced his defense.  In fact, OVALLE admits not knowing if the alleged information passed along by MONTEAGUDO to the government was used at trial.  Therefore, as indicated, no prejudice has been shown.

In addition, OVALLE accuses his counsel of not invoking the attorney-client privilege in order to prevent MONTEAGUDO from testifying at trial in violation of the privilege.  However, since the existence of the alleged joint defense privilege had not been proven, OVALLE's counsel could be under no obligation to invoke the

CIVIL NO. 97-1571 (RLA)                                    Page 17

attorney-client privilege.   More so, even if the joint defense

privilege had existed, OVALLE, likewise, fails to demonstrate that

his counsel had knowledge that the information MONTEAGUDO provided at

trial was obtained by him in breach of such an agreement.

Furthermore, the decision not to invoke the attorney-client

privilege was made by the trial counsel as part of his case strategy

at the time of trial.   The reasonableness of counsel's challenged

conduct should be judged upon the facts of this particular case,

"viewed as of the time of counsel's conduct." Strickland, 466 U.S.

690.   The bases for the trial counsel's strategy at that moment are

unknown to us but they are presumed to be reasonable and deference

should be granted to counsel's judgments.   Therefore, OVALLE has once

again failed to rebut the strong presumption that counsel's conduct

falls within a wide range of reasonable professional assistance and

that, under the circumstances, the challenged action 'might be

considered sound trial strategy.' Lema, 987 F.2d at 51.

Thus, OVALLE's claim is unsupported, and is hereby **DENIED**.

   4.   **Alleged failure to suppress testimony in violation of 18
        U.S.C. § 201(c)(2)**

OVALLE contends that the Government obtained the testimonies of

a confidential informant and a cooperating codefendant in violation

of 18 U.S.C. § 201(c)(2).   To that effect, OVALLE argues that his

attorney should have moved to suppress the testimony of these

witnesses pursuant to the ruling of the Tenth Circuit Court of

Appeals in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998).

1   CIVIL NO. 97-1571 (RLA)                                    Page 18

2   ─────────────────────────────────────────────────────────────────

3   Although also acknowledging that the <u>Singleton</u> case is no longer

4   applicable, OVALLE argues that "the prohibition of Section 201(c)(2)

5   has not been repealed by Congress and is still subject to

6   interpretation by the courts and enforcement accordingly."

7       In fact, the interpretation of the First Circuit Court of

8   Appeals was not to be delayed:

9               Singleton I appears to us to be nothing more

10              than an aberration, and we reject its reasoning

11              and result.   We use the term "aberration"

12              advisedly, because the opinion has been

13              overruled in the circuit of its birth, and

14              several other courts of appeals have disavowed

15              its anfractuous reading of section 201(c)(2).

16              Today, we make our position explicit and

17              unqualified[:]

18              . . .

19              We hold, without serious question, that 18

20              U.S.C. § 201(c)(2) does not bar the government

21              from promising leniency or the like to

22              cooperating witnesses.

23  <u>United States v. Lara</u>, 181 F.3d 183, 197-198 (1st Cir. 1999)(internal

24  citations omitted).

25      Finally, OVALLE's attempt to invoke this witness-bribery statute

26  is in vain.   While the testimony of cooperating witnesses must always

27  be scrutinized with care, the witnesses here were subjected to

28  examination by several sets of defense counsel and the jury was

1    CIVIL NO. 97-1571 (RLA)                                    Page 19

2    _____

3    properly instructed to weigh their testimony in light of the promises

4    made and the inducements offered.  See e.g., United States v. Franky-

5    Ortiz, 230 F.3d 405, 407 (1st Cir. 2000).

6        Accordingly, OVALLE's claim in this regard must also be DENIED.

7        **5.    Alleged outrageous Government Conduct**

8        OVALLE claims that his attorney incurred in ineffective

9    assistance of counsel because he failed to secure the records of

10   government payments to the confidential informant which was

11   discoverable evidence, in order to elicit the defense of outrageous

12   government conduct.  OVALLE's claim is unsupported.  No one knows if

13   his attorney attempted to obtain such record from the government but

14   was somehow unsuccessful.  Furthermore, OVALLE's counsel could have

15   decided not to obtain the records as part of his trial strategy.  In

16   this regard, "[our] scrutiny of the attorney's performance must be

17   highly deferential."  Negron v. U.S., 175 F.Supp.2d 148, 152 (D.P.R.

18   2001)(citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052).  A court

19   must evaluate the challenged conduct of the attorney not with the

20   benefit of hindsight, but from the attorney's perspective at the time

21   of trial.  Strickland, 466 U.S. at 689, 104 S.Ct. 2052.

22       OVALLE has again failed to rebut the strong presumption that his

23   attorney's conduct fell within a wide range of reasonable

24   professional assistance.  Furthermore, he failed to show that there

25   is a reasonable probability that, but for his counsel's deficient

26   performance, the outcome would have been different.  Strickland 466

CIVIL NO. 97-1571 (RLA)                                    Page 20

U.S. at 694. Given the weight of the Government's evidence at trial, we fail to see how this impeachment evidence against the informant could have yielded a different result at trial.

Accordingly, this claim is also DENIED.

### Retroactive Application of Amendment 505
### of Sentencing Guidelines

OVALLE alleges that he should be resentenced under 18 U.S.C. § 3582(c)(2) pursuant to Amendment 505[4] to Section 2D1.1 of the United States Sentencing Guidelines, which lowered the upper limit of the Drug Quantity Table to 38 and was made retroactive pursuant to Sentencing Guidelines Section 1B1.10(c).

Unfortunately for OVALLE, even if the Amendment were to be applied, he would still face a sentencing guideline range of life imprisonment. Using a base offense level of 38 pursuant to Amendment 505, in substitution of the base offense level of 40 applied at his sentencing, and adding the 2-point enhancement for possession of the firearms; and the 4-point enhancement for role in the offense;[5] would render an offense level of 44 for OVALLE. Combining his Criminal History Category of I, OVALLE's offense level of 44 would still call for a term of life imprisonment.

Accordingly, because the retroactive application would not produce a reduction in OVALLE'S sentence in any case, this claim is also DENIED.

---

[4] Amendment 505 became effective on November 1, 1994.

[5] The application of both of these enhancements was affirmed on appeal. See Ovalle, 36 F.3d at 228-229.

CIVIL NO. 97-1571 (RLA)                                    Page 21

## Claim that Petitioner's Sentence is in Violation of Apprendi v. New Jersey

By way of a series of supplemental pleadings,[6] OVALLE avers that the Court erred in sentencing him pursuant to the rule enunciated in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The rule in Apprendi is that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Petitioner claims that he "received a sentence five (5) years longer than the maximum he could have received had he been sentenced on the facts as found by the jury."

Apprendi was decided after OVALLE filed the present petition. The First Circuit has not directly addressed the question of whether Apprendi applies retroactively. However, the general consensus of several other circuits is that Apprendi does not apply retroactively to cases on collateral review. See Negron v. U.S., 175 F.Supp.2d 148 (D.P.R. 2001) (citing U.S. v. Moss, 252 F.3d 993 (8th Cir. 2001); McCoy v. U.S., 266 F.3d 1245 (11th Cir. 2001); Forbes v. U.S., 262 F.3d 143 (2nd Cir. 2001); U.S. v. Sanders, 247 F.3d 139 (4th Cir. 2001)). This Court will not depart from the opinions in these cases,

---

[6] See Supplemental Motion in Support to [sic] Motion to Vacate Sentence (**docket No. 28**); United States of America's Response... (**docket No. 31**); and Petitioner's Reply...(**docket No. 33**). See also Additional Motion in Support of Pending 2255 Petition (**docket No. 39**) and Supplemental Memorandum of Law in Support of 2255 Petition (**docket No. 40**).

CIVIL NO. 97-1571 (RLA)                                              **Page 22**

and will not, therefore, apply <u>Apprendi</u> retroactively.  Accordingly, this claim must also be DISMISSED.

### Motion for Downward Departure

Finally, OVALLE urges us to consider his extraordinary efforts at rehabilitation and depart downward at the time of his resentencing if he proves "successful on the <u>Apprendi</u> issue".[7]

Since the Court has declined to apply <u>Apprendi</u> retroactively, this request is DENIED as moot.[8]

Having denied all of OVALLE's claims, his petition for post-conviction relief under 28 U.S.C. § 2255 is hereby **DISMISSED**.[9]

Judgment to be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 4 day of April, 2003.

                                    RAYMOND L. ACOSTA
                                    United States District Judge

---

[7] <u>See</u> Motion for Downward departure pursuant to U.S.S.G. § 5K2.0, with Incorporated Memorandum of Law in Support, (**docket No. 34**).

[8] Defendant's Motion for Immediate Deportation is likewise **DENIED**.  <u>See</u> docket No. 311 in Criminal Case No. 91-159 (RLA).

[9] Petitioner's Motion for Evidentiary Hearing (**docket No. 24)** is DENIED.  A habeas petitioner is not automatically entitled to a hearing, <u>Machibroda v. United States</u>, 368 U.S. 487 (1962), and the court, by its own action or by requiring a response from the government, may be able to gain sufficient information to dispose of appellant's allegations without a hearing. <u>Hart v. United States</u> 565 F.2d 360, 362 ( 1st Cir. 1978).